1

1          UNITED STATES DISTRICT COURT

2            DISTRICT OF CONNECTICUT

3      ----------------------------x

4      UNITED STATES OF AMERICA,
                   Plaintiff,          3:02CR 184 (EBB)

5

6              vs.

7      COLLINGTON GREEN,              February 21, 2003
                   Defendant
8      ----------------------------x

9                                     Federal Building
                                      141 Church Street
10                                    New Haven, Connecticut

11

12                       SENTENCING

13

14

15     Held Before:
           The Honorable ELLEN BREE BURNS,
16             Senior U.S.D.C. Judge

17

18

19

20

21

22

23                   FALZARANO COURT REPORTERS
                       117 N. Saddle Ridge
24                     West Simsbury, CT 06092
                         860.651.0258

25

2

1    APPEARANCES:

2        For the Plaintiff:

3            OFFICE OF THE UNITED STATES ATTORNEY
             450 Main Street
4            Hartford, CT 06103
             860.947.1101
5                By:   RAYMOND F. MILLER, ESQ.
                      Assistant United States Attorney
6
         For the Defendant:
7
             RICHARD S. CRAMER, ESQ.
8            449 Silas Deane Highway
             Wethersfield, CT 06109
9            860.257.3500

10       Also Present:

11           Jacqueline Carroll
             United States Probation Officer
12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1              (Court commenced:  3:47 p.m.)

2

3              THE COURT:  Mr. Kramer, would you and your

4    client come to the lectern, please.

5              Good afternoon, Mr. Green.

6              THE DEFENDANT:  Hi.

7              THE COURT:  Have you read your presentence

8    report, sir?  I noticed that Mr. Kramer

9    said your reading skills are somewhat

10   limited.  Have you read your report?

11             THE DEFENDANT:  Yeah, I have.

12             THE COURT:  You went over it with Mr.

13   Kramer; did you?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  And did he answer all the

16   questions you had with respect to the

17   material in that report?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  Okay.  Is there anything that

20   you felt that needed to be corrected?

21   Any statements in it that you felt needed

22   to be corrected, Mr. Green?

23             THE DEFENDANT:  No, ma'am.

24             THE COURT:  Mr. Kramer, I'll hear your

25   remarks, sir. I've read your sentencing

Falzarano Court Reporters

4

1    memorandum.

2        MR. KRAMER:  Yes, your Honor.  I

3    think both sides have submitted fairly

4    exhaustive sentencing memorandums, and I

5    try to cut to the chase in these

6    situations.

7        The overriding issue, of course, here

8    is the Defendant seeks a downward

9    departure.  Because of his status as a

10   career offender, the Government is, I

11   understand, not opposing the fact, and

12   seems to agree with me that there should

13   be a downward departure.

14       We all understand that, ultimately,

15   the fact that we agree doesn't preclude

16   the Court from disagreeing.  But I can

17   say without hyperbole or bombastic

18   rhetoric that I've never seen a case in

19   which called for a greater -- had a

20   greater call for downward departure than

21   this case.

22       I look at the Misho case.  I read it

23   and re-read it a number of times.  As you

24   can see, I'm somewhat fascinated by

25   Judge Scheinblum's remarks concerning a

5

fourteen-year sentence, and I cite it in my brief.

The mathematics are simple. His guideline, if he were not a career offender, would be approximately 51 months.  I'm talking the low end.  Here, his low end is 15 years, 8 months.  I think I said 200 percent, it's more like 400 percent exploding upwards into the stratosphere.

The philosophy of the guidelines, as I'm reading all these cases the other night is that -- and this is no great revelation to anybody -- that they're called incremental increases, horizontally and vertically.

By that I mean, the amount of drugs goes up, the sentence goes up; your record gets longer, the sentence goes up. And it's integrals that create that increase.  Here the career offender is what makes it go up almost 400 percent.

Mr. Gustave will, of course, point out that if the probation officer factored in the crack it would be

6

1     26 grams that were found, it would be

2     somewhat higher.  It would be, I think

3     around 75 months on the low end.

4          Either way, it's still considerable.

5     That crack was not charged.  It was in

6     the car, he had responsibility for it,

7     but where that goes is another matter.

8     But the point is there was a great

9     increase in his sentence because of the

10    career offender status.  More than any

11    I've ever seen.

12         And you look at Judge Newman's

13    description of facts that one considers,

14    and you see that he falls into

15    Judge Newman's hypothetical case.  He

16    falls into the facts of that case.

17        As I said in my memo, the sentences

18    he received for the predicate felonies

19    could not have been any lower.  They

20    weren't even maximum fines.  I suppose

21    you could twist it around and say you got

22    a big break from Judge Scheinblum in

23    State court, now, we're going to take it

24    away.  To be honest with you, that

25    doesn't seem to be the way the thinking

7

1    is in the decision of Misho and others in

2    the Second Circuit.

3        I'd like to think that the State

4    judge knowing all the facts in the case;

5    confronting the Defendant, at that time,

6    across the table; listening to the

7    prosecutor in chambers -- as your Honor

8    knows is always done -- arrived at what

9    he thought, at the time, was a correct

10   and just sentence under the circumstances

11   known at that time.  And it falls right

12   into the parameters of Misho.

13       Because, as I said, I can't imagine

14   any lower type sentence, except in the

15   other possession count, he doesn't have a

16   plethora of other cases, other

17   convictions which would justify in some

18   way the upward departure -- I mean, the

19   career offender status.

20       The amount of drugs on the predicate

21   felonies was extremely low.  One of the

22   agents in the 2000 report describes him

23   as a street-level dealer or says, I'm

24   going to search the man because this

25   looks like it has all the increments of a

Falzarano Court Reporters

8

1    street-level drug dealer.  And street

2    level is what he was.  And street level

3    is what is described in Misho and some of

4    the other cases.  It is the type of

5    situation which calls for a downward

6    departure.

7        THE COURT:  Well, I thought

8    Judge Newman said that was not a reason

9    for a downward departure.

10        MR. KRAMER:  What Judge Scheinblum

11    did in Misho is simply said, The

12    predicate felonies were street level,

13    therefore, I'm going to depart.

14        THE COURT:  The judge said that

15    wasn't a good reason.

16        MR. KRAMER:  That wasn't a good reason by

17    itself because you have to look at the

18    total picture and not have a mono-reason

19    for doing it.  But it was one of the

20    reasons which Judge Newman, in Misho,

21    considered along with the others.  The

22    others being, the length of sentence you

23    receive and the other factors which I've

24    cited in my brief.

25        No, I'm not trying to ask this Court

9

1    to reverse Misho or Judge Newman's

2    briefings.  But I certainly feel it

3    stands as a factor in determining whether

4    there should be a downward departure.

5         I can't add anything more than what

6    I've said in my brief.  The Government

7    has made two references to other factors

8    which I don't think are crucial but I'll

9    still address them.

10        The purity of the drugs are

11   relatively high.  I don't know that.  I'm

12   not an expert in drugs, but 86 percent or

13   whatever it was is high or not high, I

14   don't really know.

15        THE COURT:  Well, 86 percent out of

16   100 percent sounds kind of high; doesn't

17   it?

18        MR. CRAMER:  Well, it's higher than

19   76 and less than 92.  I guess it's

20   higher.  I don't know.  I'm not sure

21   that's an overriding factor, but perhaps,

22   in some small way it might break the

23   downward departure I hope that he will

24   receive.

25        And the other is that there were

10

1    children in the car at the time.  I see

2    this often in State court, and it's hard

3    for me to respond.

4         THE COURT:  You see children in the car

5    often?  Is that what you're saying?

6         MR. KRAMER: No.  I've seen cases in

7    State court where there were children

8    around.  But, I mean, as horrendous as

9    drugs are and as much as we condemn it, I

10   don't think it takes -- I don't think I'm

11   straying too far by saying, they're in

12   the car, but the children aren't in

13   danger by them.  They're not going to

14   ingest them.  They're not going to eat

15   them.  They're not going to absorb them.

16   The deal was not going to go down with

17   the children there.

18        What happened, as Collington

19   explained to me, the drugs were in the

20   car, fitted under the car seat.  He gets

21   called, at the last moment, by his

22   girlfriend to transport the kids to

23   school.  He would have, if he weren't

24   stopped by the police, dropped the kids

25   off at school and then, subsequently,

Falzarano Court Reporters

11

1    dropped off the drugs.

2        So, obviously, it's not something

3    that he gets a medal for, having kids in

4    the car.  But I just simply don't think

5    that it is that serious a matter to

6    warrant a guideline issue.

7        I also stated in my memo that the

8    Court can, as the Court knows, depart on

9    the horizontal axis or on the vertical

10   axis, looking, of course, where Mr. Green

11   would be were he not a career offender.

12   And, as your Honor knows, would be much

13   lower in both axes.

14       And the Court can depart, even if it

15   finds that there's a significant chance

16   he might commit crimes in the future.  It

17   can still depart downward, if it finds

18   that the criminal history significantly

19   overrepresents his -- career offender

20   status significantly overrepresents his

21   criminal history.

22       I direct most of my argument to the

23   argument, as you know, that the criminal

24   history category of career offenders

25   significantly overrepresents his criminal

12

1   history.  But as far as his likelihood of

2   offending again, he had a drug habit

3   before.  He's gone through drug

4   rehabilitation in jail.  He expresses

5   true sorrow and remorse for what he did.

6   He maybe was treated too lightly before.

7        And so, I think there is another

8   basis which the Court will find that he

9   will not likely offend again as a drug

10   dealer.

11        He has no violence in his background,

12   which is an important factor as to

13   whether you should downwardly depart.

14   There are cases that sort of preclude a

15   downward departure for violence.  He has

16   never been charged with a violent crime.

17   He has never been accused of a violent

18   crime.  There are no weapons involved in

19   any way.  So, those are other factors,

20   all of which come into play for the

21   downward departure.

22        As far as him going to commit a crime

23   again, he's going to be deported when

24   this is over.  He won't commit a crime in

25   the United States, obviously, when this

13

1    is over with.  He's going to be separated

2    from his children, which has caused him

3    great grief, although one could say, he

4    shouldn't have had them in the car.

5        And as your Honor can see it, I'm not

6    saying this is a basis for downward

7    departure, but certainly a factor as to

8    where the Court goes.  He had a

9    horrendous youth.  He was abandoned by

10   his mother and father.  He was living in

11   the streets of Jamaica.  The Court sees

12   all the time people from deprived

13   childhood, but his is one of the more

14   extreme I've ever seen.

15       He tells me that he is at Wyatt, and

16   he's involved in a drug program.  He's

17   volunteered for extra work, and he's

18   trying to turn his life around.

19       So, for all of these reasons, I'd ask

20   the Court to depart downward as close as

21   it can to the guidelines that he would

22   have had were he not characterized as a

23   career offender.  I think that's adequate

24   deterrent.  I think under the Misho case

25   and other cases I've cited, there's a

14

firm basis for that type of a downward
departure.  I don't think the Government,
from what I understand, has any strong
disagreement.

THE COURT:  Thank you.  Mr. Green,
is there anything you wish to say, sir.

THE DEFENDANT:  Yes ma'am.  I'm
sorry for what I've done.  I know I've
caused a lot of people a lot of pain.  I
thought of my kids.  I thought what I was
doing was going to help them, but it was
the opposite.

Right now, I'm hurting them with all
of this.  I'm going to be deported.  I've
got my kids here and I've got one in
Jamaica.  I'm going to be separated from
them.  Please, I'm not going to be here
to commit any more crimes.  I love this
country.

I'm sorry for what I have done.  I'm
sorry for all I have done here.  If I
could turn my life around, I know I
wouldn't do what I was doing.  This is a
wake up call in my life, and I swear I'm
not going to do what I was doing again.

15

1        THE COURT:  Thank you.  May I hear

2   from the Government, please?

3        MR. MILLER:  Thank you, your Honor.

4   Three points.  First, in terms of the

5   calculation in paragraph 15 of the PSR.

6   As it indicated, in addition to the,

7   approximately, a kilogram of powdered

8   cocaine, there are 26 grams of crack.

9   Well, it's not a material issue so that

10  the Court can commission a sentence, but

11  he has been properly classified as a

12  career offender.

13        When you apply the drug equivalency

14  tables found in 2B1.1, counting crack as

15  relevant conduct, the base level in

16  Section 26 indicated in paragraph 15, the

17  base level should be 30, because the

18  crack and cocaine come out to be

19  approximately 718 kilograms of marijuana,

20  which requires the application of

21  level 30.

22        If you subtract three levels from

23  that and apply a criminal history of 2,

24  as I know Mr. Kramer keeps referring to

25  this, the correct guidelines, without the

Falzarano Court Reporters

16

1  career offender issue, would be 78 to 97

2  months.

3      Second, more of a housekeeping

4  matter.  Immediately prior to the

5  commencement of the proceeding today, I

6  was handed the third addendum and found

7  out for the first time that the Defense

8  is asking for a downward departure based

9  on emotional and physical deprivation

10  from the Defendant's youth.

11      It seems like he's backed off that

12  point.  Just for the record, the

13  Government would object to that being the

14  basis of a downward departure.

15      That being said, the Government does

16  agree that a departure on Misho, within

17  the Court's discretion, is appropriate in

18  this case.  The degree of that departure

19  is clearly, wholly within the Court's

20  discretion.

21      The Government would just, as it said

22  in its memo, point out to the Court that

23  the fact that cocaine was of high purity

24  and that a child was in the car with the

25  cocaine are issues that the Government

17

does not seek an upward departure for.

Although, in some cases we would.  Here

are the facts that do support the point

to the Court.  It's important for the

Court to use those facts in determining

where in the applicable guideline range

the Defendant should be sentenced.

I would add one fact that I believe

is uncontested.  Cocaine was more than

found in the car, it was found next to a

child's car seat in the car.

Other than that, of course, if there

are any questions, the Government would

rely on its brief.

THE COURT:  Thank you. I read, with

interest, the Misho decision.  This is

the first time it was called to my

attention.

In that case -- and you will recall

that the trial judge had reduced the

sentence of the defendant by something

less than a year.  As I remember it, it

was about eleven months she shaved off

the sentence.  And upholding it that the

reason given was inappropriate, that is,

18

1      the street-level sale argument.

2           However, what you're asking me for

3      here is a considerably greater departure,

4      Mr. Kramer, than was the case in Misho.

5      I'm not quite sure how Judge Newman would

6      have felt about that.

7           He does say on page 221.  In some

8      cases, individualized consideration of

9      all relevant factors might warrant the

10     exercise of discretion to include a

11     slightly reduced sentence would be

12     sufficient.

13          And that would be what I would say

14     that the trial judge in this case had

15     done, taking a slightly reduced sentence.

16     Whether Judge Newman would have

17     considered a departure which is -- I

18     think you're asking me to give him the

19     mandatory minimum of 60 months where the

20     minimum is 188.

21          And by the way there is no dispute as

22     to what the guideline range is

23     appropriately calculated, correct?

24          MR. CRAMER:  That's correct, your

25     Honor.

19

1      THE COURT:  Yes.  So the guideline range is

2  188 to 235 months.  You are asking me to

3  go down to 60 which is about one-third of

4  the bottom of the guideline range.

5      It's quite a different factual case

6  than Misho was.  I think it's instructed

7  that Judge Newman will read that one

8  should consider all of the relevant

9  factors.

10      And the Government has pointed out

11  those things which they consider to be

12  relevant, which I also consider to be

13  relevant.  And interestingly, I have sat

14  down with Ms. Carroll and we have come up

15  with the same calculation which the

16  Government did.

17      Even if I were not to consider the

18  career offender issue, it would be a

19  level 30 minus three points for

20  acceptance of responsibility, 27, with a

21  two criminal history category, giving him

22  78 to 97 months.  We came out with that

23  also.  And one is taking into

24  consideration the presence of the crack

25  in the car.

20

1        One factor that entered into the

2   level 30 that I referred to before.  The

3   presence of the children -- you were

4   talking about they're not going to ingest

5   it, they're not going to be handling it.

6   The mere fact of drug dealing is a

7   dangerous thing.  To have children any

8   where near it, invites a possible

9   tragedy.

10        If anyone had known that Mr. Green

11   had all of this cocaine in the car, they

12   might have well attempted to do something

13   to get it from him.  The children might

14   have been injured.  I think one has to

15   think about those things.  And children

16   should be kept far, far from drugs for

17   many reasons.

18        And another thing that's troublesome

19   is that Mr. Green came to the United

20   States in 1996, as I understand it.  Is

21   that correct, sir, you came here in '96?

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  And, apparently, immediately

24   started selling drugs because his first

25   conviction is in '96.  I guess that's

21

been his main source of income since he
arrived here.

THE DEFENDANT:  No, ma'am.

MR. CRAMER:  He worked as a cook.

THE COURT:  Yes.  Sort of an
under-the-table kind of arrangement, as I
understand it.

I understand why people come to the
United States.  They hope to do better by
themselves.  It's unfortunate that
Mr. Green chose to be a drug dealer in
order to better himself, because he's now
faced with this very great dilemma.

I am going to depart downward, as the
Defense has requested.  I am going down
to that level 30 and the guideline range,
I mean, the criminal history category of
2, 78 to 97 months.  My question now is
where, within that range, the Defendant
should be sentenced.

Again, looking back at Misho, there's
a dramatic difference in the sentence
that we come up with here and the one
that the career offender guidelines
require.  Quite different from what was

Falzarano Court Reporters

22

1    before Judge Newman in the Misho case.

2        And I believe, although I cannot be

3    certain, that the argument that was

4    presented in the Misho decision suggested

5    that that reduction was appropriate, but

6    it had to be within proper reasons for

7    its reduction, and one of them was not

8    the fact that he was a street-level

9    dealer.

10       I think it's appropriate, as I say,

11   to make this departure, but I also think

12   it's appropriate to sentence the

13   Defendant to the high end of that

14   guideline range.

15       And therefore, he is committed to the

16   custody of the Bureau of Prisons for a

17   period of 97 months.  He's also placed on

18   a supervised release of four years.

19       Conditions of supervised release,

20   mandatory conditions are set forth in

21   sentencing guidelines, 5B1.3A.  Of those,

22   the relevant ones appear to be the

23   numbers one, two, four.  The other

24   provisions of the mandatory conditions do

25   not seem to apply to this specific

Falzarano Court Reporters

23

1    defendant.

2        The Court also imposes a special

3    condition of supervised release to

4    include participation in a program of

5    substance abuse, inpatient or outpatient,

6    as it is determined appropriate by the

7    probation officer and to include random

8    testing to determine if the Defendant is

9    reverting to using drugs.

10        I think it's commendable that you

11    have attempted to address that problem

12    already, sir.  And if you are placed into

13    a program by the probation officer, then

14    to the extent that you can pay for some

15    or all of it, you will be required to do

16    so.

17        Furthermore, if you are deported from

18    the United States, which I presume is

19    almost a certainty, you shall not reenter

20    the United States without the written

21    approval of the attorney general and

22    notice to the United States Attorney's

23    Office in this district.

24        Now, I think I told you at the time

25    you were entering your plea, sir, that if

Falzarano Court Reporters

24

1    you violate the conditions of supervised

2    release, you may have to go back to

3    prison again.  Do you know that?

4            THE DEFENDANT:  Yes, ma'am.

5            THE COURT:  I am not imposing a

6    fine.  This defendant can't afford one.

7    However, there is a mandatory special

8    assessment of $100.

9            Sir, you are entitled to take an

10    appeal from the sentence I impose today.

11    And if you want to do that, you have to

12    file a notice of appeal within ten days.

13    And if you cannot afford the services of

14    an attorney to help you perfect that

15    appeal, the court will provide you with

16    one.

17            Anything further, gentlemen?

18        MR. MILLER:  Not from the

19    Government, your Honor.

20        MR. CRAMER:  No, your Honor.

21        THE COURT:  Thank you.

22        THE DEFENDANT:  Thank you, very much, your

23    Honor.

24

25            (Court concluded:  4:11 p.m.)

25

CERTIFICATE

1

2

3          I hereby certify that the foregoing

4     24 pages are a complete and accurate computer-aided

5     transcription of my original stenotype notes taken of the

6     proceedings, which were held in re:   USA VS. COLLINGTON

7     GREEN, held before the Honorable Ellen Bree Burns, Senior

8     USDC Judge, U.S. District, 141 Church Street, New Haven,

9     Connecticut on February 21, 2003.

10

11

12

13     _____

14              IRMA I. SANCHEZ
                Court Reporter
15

16

17

18

19

20

21

22

23

24

25

Falzarano Court Reporters