EXHIBIT (C)

EXHIBIT (C)

Adjustment for Acceptance of Responsibility

13. During the defendant's interview with the probation officer he indicated that he preferred to submit a written statement regarding his conduct. As of this writing, a statement has not been received. Nonetheless, during the defendant's guilty plea hearing he stated that he did in fact possess cocaine on June 25, 2002 and that he intended to distribute it to others. Based upon the defendant's statements made during the guilty plea hearing, a reduction pursuant to U.S.S.G. § 3E1.1, is recommended.

Offense Level Computation

14. The November 1, 2002 Sentencing Guidelines manual was used for the following calculations.

15. Base Offense Level: The guideline for a 21 U.S.C. §§841(a)(1) and 841(b)(1)(B) offense is found in Chapter Two, Part D - Offenses Involving Drugs, of the Sentencing Guidelines. Section 2D1.1(c) establishes a base offense level of 26 for the possession with intent to distribute at least 500 grams but less than two kilograms of cocaine. 26

16. Specific Offense Characteristic: None. 0

17. Adjustment for Role in the Offense: None. 0

18. Victim Related Adjustment: None. 0

19. Adjustment for Obstruction of Justice: None. 0

20. Pursuant to the provisions of U.S.S.G. § 4B1.1, the defendant is a career offender, based upon his being (1) at least 18 years old at the time of the instant offense; (2) the instant offense is a felony that is a controlled substance offense; and (3) the defendant has two prior felony convictions for controlled substance offenses, including the November 26, 1996 conviction for Sale of Narcotics and the July 19, 2000 for Sale of Narcotics. Therefore, pursuant to the provisions of U.S.S.G. § 4B1.1, because the statutory maximum sentence that may be imposed in this matter is forty years, an Adjusted Offense Level of 34 would apply. 34

21. Adjusted Offense Level (Subtotal): 34

22. Adjustment for Acceptance of Responsibility: The defendant has admitted responsibility for the offense. Under Guideline § 3E1.1(a), a two level reduction is recommended. Because of the timely provision of full information about the offense an additional one level reduction is recommended under Guideline §§ 3E1.1(b)(1). A total reduction of three levels is recommended. -3

23. Total Offense Level: 31

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

Criminal Convictions

24. The defendant advised that he was represented by counsel in each of the following matters.

| | Date of Arrest | Charge/ Agency | Date Sentence Imposed/Disposition | Guideline/ Score | |
|---|---|---|---|---|---|
| 25. | 11/26/96 (Age 30) | Sale of Narcotics Hartford, CT Police Department | 12/02/96: $500 fine Hartford Superior Court Dkt. No. CR96-0497540 | 4A1.1(c) | 1 |

As detailed in the Hartford, Connecticut Police incident report, on November 26, 1996, officers assigned to the Asylum Hill Crime Unit were conducting surveillance on 57 Sumner Street, as a result of numerous complaints from area residents about illegal sales of narcotics at that location. While conducting surveillance, officers observed the defendant arrive in a motor vehicle and engage in a hand-to-hand narcotics transaction with another individual. Officers subsequently stopped the vehicle and removed the defendant from the driver's seat. Officers also removed a passenger from the vehicle (the individual who had engaged in the narcotics transaction with the defendant). While being questioned by the police, the passenger of the vehicle dropped an item on the ground. Officers retrieved the item and found it to be cocaine. Both individuals were arrested and charged with narcotics violations.

| | | | | | |
|---|---|---|---|---|---|
| 26. | 04/07/99 (Age 33) | Possession of Narcotics Hartford, CT Police Department | 04/20/99: 3 years, execution suspended; 3 years conditional discharge Hartford Superior Court Dkt. No. CR99-0534112 | 4A1.1(c) | 1 |

As detailed in the Hartford, Connecticut Police incident report, on April 6, 1996, officers assigned to the Frog Hollow Police Sub-Station were advised by a confidential informant that the defendant was known to sell large amounts of crack cocaine. The informant arranged to meet the defendant at a planned location, which was being surveilled by Hartford police officers. However, when the defendant arrived at the location he abruptly left. Officers subsequently stopped the vehicle that the defendant was operating and removed him from the vehicle. Officers observed a white powdery substance on the dashboard of the vehicle and what appeared to be a clear piece of plastic tucked into the dashboard. A search of the area produced 35 grams of crack cocaine. The defendant was arrested and charged with narcotics violations.

The record of the State of Connecticut, Office of Adult Probation indicates that the defendant successfully completed his three-year conditional discharge (unsupervised probation) term on April 20, 2002.

| | | | | | |
|---|---|---|---|---|---|
| 27. | 07/19/00 (Age 34) | Sale of Narcotics Hartford, CT Police Department | 08/08/00: $1500 fine Hartford Superior Court Dkt. No. CR00-0544092 | 4A1.1(c) | 1 |

As detailed in the Hartford, Connecticut Police incident report, on July 19, 2000, officers assigned to the Albany Avenue area in Hartford were conducting surveillance as a result of numerous complaints from area residents about illegal sales of narcotics at that location. While watching the intersection of Vine Street and Albany Avenue, officers observed a black Nissan Maxima which was being operated by Collington Greent. Officers observed the defendant engage in a hand-to hand narcotics transaction and subsequently pulled over the vehicle. The defendant provided the officers with permission to search the vehicle and they uncovered a small plastic bag containing approximately one ounce of crack cocaine.


Criminal History Computation

28. The defendant has three criminal history points resulting from his convictions. However, as noted previously, the defendant qualifies as a career offender. Therefore, pursuant to the provisions of U.S.S.G. § 4B1.1, the defendant is placed in a Criminal History Category VI.

## PART C. OFFENDER CHARACTERISTICS

Personal and Family Data

29. The defendant, Collington (NMN) Green is 36 years old and was born on May 18, 1966, in St. Elizabeth, Jamaica. Mr. Green described a childhood of turmoil. He stated that he comes from a very poor family and a very poor background. He stated that when he was three years old his mother died of a suicidal drowning. His mother, Lenita Banton, was in her early thirties, according to the defendant, at the time of her death. His older sister, Carmen cared for him and his two other siblings, but was only able to do so for approximately two years, at which time he and his younger sister, Eileen were sent to live with their father in Kingston, Jamaica. Carmen, and an older brother, the defendant related, were old enough to be on their own.

30. The defendant's father, Renald Green, remarried a woman the defendant knew only as Olive. He stated that his father was an alcoholic and was physically and verbally abusive and when he, the defendant, was twelve years old he ran away from home. He lived on the streets and used to sell newspapers and freezer pops to make money to pay for school lunches and a uniform. He explained that he lived at friends' houses for as long as he was welcome and when he was 17 years old, he got his own apartment in Kingston, Jamaica. His father, he related, died nine years ago from cancer. He was 65 years old at time of his death.

31. The defendant advised that his family is not close. He explained that they have spent so much time separated, that they simply do not know each other. He believes that his older sister, Carmen, who is 50 years old, is married and has several children and that his brother, Leaford, is 45 years old, and lives in Spanishtown, Jamaica. His younger sister, Eileen, last he knew, resides in St. Elizabeth, Jamaica.

32. Mr. Green advised that he entered the United States illegally in 1996 and resided in New York initially. He remained in New York for four months and then moved to Hartford, Connecticut, where he had friends. He resided in Hartford, Connecticut until his arrest in the instant offense.