UNITED STATES DISTRICT COURT **FILED**
DISTRICT OF CONNECTICUT

2005 FEB 28 P 3: 12

| | |
|---|---|
| COLLINGTON GREEN | : Civil No. 3:04CV319(EBB) |
| | : Criminal No. 3:02CR184(EBB) |
| V. | : U.S. DISTRICT COURT |
| | : NEW HAVEN, CT |
| UNITED STATES OF AMERICA | : February 25, 2005 |

### GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND SUPPLEMENTAL MEMORANDUM IN SUPPORT OF HIS MOTION TO VACATE AND SET ASIDE THE SENTENCE

On or about February 7, 2005, the petitioner filed a second supplemental memorandum arguing that his sentence should be vacated, reversed and set aside under the Supreme Court's decisions in United States v. Booker, 125 S. Ct. 738 (2005) and Blakely v. Washington, 124 S. Ct. 2531 (2004). Booker and Blakely are not, however, retroactively applicable to cases on a collateral review. Accordingly, and for the reasons set forth in the Government's previously-filed responses (Docs. 31 and 41), the defendant's petition is without merit and should be summarily dismissed.

On January 12, 2005, the United States Supreme Court, in United States v. Booker, extended the holding of Blakely v. Washington, 124 S. Ct. 2531 (2004), to the United States Sentencing Guidelines. Under Booker, therefore, the United States Sentencing Guidelines are no longer mandatory. The Government respectfully submits that the principle adopted in Booker, like the principle adopted in Blakely, constitutes a "new constitutional rule of criminal procedure" which, under Teague v. Lane, 489 U.S. 288 (1989), is not retroactively applicable to cases -- like the petitioner's -- that became final before the decision was announced.

In McReynolds v. United States, 2005 WL 237642 (7th Cir. Feb. 2, 2005), the Seventh Circuit held that "Booker does not apply retroactively to criminal cases that became final before

its release on January 12, 2005. . . . Booker itself represents the establishment of a new rule about the federal system. Petitioners' convictions and sentences became final well before Booker was issued, and its approach therefore does not govern these collateral proceedings." Id. at *5; see Warren v. United States, 2005 WL 165385, at *9-10 (D. Conn. Jan. 25, 2005) (Thompson, J.) (Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely and Booker do not "afford[] relief" to the petitioner on collateral attack); see also, e.g., United States v. Russell, 2005 WL 281183 (E.D. Pa. Feb. 3, 2005) (Booker not retroactive); Tuttamore v. United States, 2005 WL 234368 (N.D. Ohio Feb. 1, 2005) ("To the extent that petitioner relies on Booker, he cannot so prevail, because the decision in Booker is not retroactive for purposes of § 2255 collateral attacks"); Gerrish v. United States, 2005 WL 159642 (D. Me. Jan. 25, 2005) (same); cf. Green v. United States, 2005 WL 237204 (2d Cir. Feb. 2, 2005) (motion to file second or successive application on the basis of Booker denied since Supreme Court has not explicitly made Booker or Blakely retroactive on collateral attack); In re Anderson, 2005 WL 123923 (11th Cir. Jan 21, 2005) ("because Booker, like Blakely and Ring, is based on an extension of Apprendi, defendant cannot show that the Supreme Court has made that decision retroactive to cases already final on direct review"); Hamlin v. United States, 2005 WL 102959 (D. Me. Jan. 19, 2005) (same).

The Government respectfully submits that the Court should follow the Seventh Circuit's reasoning in McReynolds and of the other courts which, to date, have found Booker unavailable on collateral attack. McReynolds relied on Schriro v. Summerlin, 124 S. Ct. 2519 (2004), a case in which the Supreme Court considered whether Ring v. Arizona, 536 U.S. 584 (2002), applied retroactively to cases that had already become final when Ring was decided. Ring had held that because Arizona law authorized the death penalty only if an aggravating factor was present,

2

Apprendi required the existence of such a factor to be proved to a jury rather than to a judge. Summerlin's conviction and death sentence, which was imposed under the same Arizona law that was at issue in Ring, became final long before Ring was decided.

The Supreme Court held that "Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review." 124 S. Ct. at 2526. The Court explained that a "new rule" resulting from one of its decisions applies to convictions that are already final only in limited circumstances. New *substantive* rules generally apply retroactively, but new *procedural* rules generally do not -- only "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding" are given retroactive effect. Id. at 2523 (internal quotation marks omitted). The Court concluded that Ring's holding is properly classified as procedural, rather than substantive, because it did not alter the range of conduct or the class of persons subject to the death penalty in Arizona; instead, it merely changed the method of determining whether the defendant engaged in that conduct. Id. at 2523-24. The Court also held that Ring did not fall within Teague's narrow exception for "watershed rules" of criminal procedure. To qualify as a watershed rule, the Court explained, a new procedural rule must be one "without which the likelihood of an accurate conviction is *seriously* diminished." Id. at 2523 (quoting Teague, 489 U.S. at 313) (emphasis added in Summerlin). The Court held that Ring did not announce a watershed rule of criminal procedure because it could not confidently say that judicial fact finding seriously diminishes the accuracy of capital sentencing proceedings. Id. at 2424-25.

Consistent with the reasoning of Summerlin, the Second Circuit had earlier joined every other Court of Appeals to have considered the issue in holding that because Apprendi announced

3

a procedural rule that does not fall within the "watershed" exception, it was not retroactively applicable to cases on collateral review. See Coleman v. United States, 329 F.3d 77 (2d Cir.), cert. denied, 124 S. Ct. 840 (2003).[1] Importantly, the Second Circuit in Coleman held that Apprendi was not a watershed rule -- not only despite the difference between using the jury and the judge as factfinder – but also despite the difference in the two burdens of proof (i.e., preponderance-of-the-evidence v. beyond-a-reasonable-doubt).

In Coleman, the court pointed out that in order to constitute a "watershed" rule of criminal procedure, "a rule must not only improve the accuracy of criminal proceedings, but also alter our understanding of the bedrock procedural elements essential to the fairness of those proceedings. In short, it must be a groundbreaking occurrence." 329 F.3d at 88 (internal quotation marks, alterations, and citations omitted). "Apprendi did not cut a new rule from whole cloth. It merely clarified and extended the scope of two well-settled principles of criminal procedure: the defendant's right to a jury trial and the government's burden of proof beyond a reasonable doubt." Id. at 89 (internal quotation marks omitted). This conclusion was supported by the consistent holdings of the Supreme Court and the Second Circuit that Apprendi errors may be reviewed for harmlessness, and not structural error -- a conclusion that would have stood in

---

[1] Accord Sepulveda v. United States, 330 F.3d 55 (1st Cir. 2003); United States v. Swinton, 333 F.3d 481 (3d Cir.), cert. denied, 124 S. Ct. 458 (2003); United States v. Sanders, 247 F.3d 139 (4th Cir.), cert. denied, 534 U.S. 1032 (2001); United States v. Brown, 305 F.3d 304 (5th Cir. 2002), cert. denied, 538 U.S. 1007 (2003); Goode v. United States, 305 F.3d 378 (6th Cir.), cert. denied, 537 U.S. 1096 (2002); Curtis v. United States, 294 F.3d 841 (7th Cir.), cert. denied, 537 U.S. 976 (2002); United States v. Moss, 252 F.3d 993 (8th Cir. 2001), cert. denied, 534 U.S. 1097 (2002); United States v. Sanchez-Cervantes, 282 F.3d 664 (9th Cir.), cert. denied, 537 U.S. 939 (2002); United States v. Mora, 293 F.3d 1213 (10th Cir.), cert. denied, 537 U.S. 961 (2002); McCoy v. United States, 266 F.3d 1245 (11th Cir. 2001), cert. denied, 536 U.S. 906 (2002).

tremendous tension with a determination that <u>Apprendi</u> announced a watershed rule, <u>see</u> <u>id</u>. at 89-90 -- that is, one of the "small core of rules requiring the observance of those procedures that . . . are implicit in the concept of ordered liberty." <u>Id</u>. at 88 (quoting <u>United States v. Mandanici</u>, 205 F.3d 519, 528 (2d Cir. 2000) (quoting, in turn, <u>Graham v. Collins</u>, 506 U.S. 461, 478 (1993))).

<span style="padding-left:2em"></span><u>Coleman</u> involved a determination that a change in the identity of the relevant fact-finder *and* an increase in the burden of proof were insufficient to constitute a "watershed" rule of criminal procedure. Because <u>Booker</u> did not entail either of those changes -- but instead maintained the identity of the fact-finder at sentencing, as well as the preponderance of the evidence standard -- it follows, *a fortiori*, that <u>Booker</u>'s rule falls short of being a "watershed" rule. Indeed, as the Second Circuit recently ruled in <u>United States v. Crosby</u>, 2005 WL 240916 (2d Cir. Feb. 2, 2005), the district court might very well have imposed the same sentence regardless of whether the Guidelines were binding (as before <u>Booker</u>) or advisory (after <u>Booker</u>), and that district judges might impose higher *or* lower sentences in <u>Booker</u>'s wake. In view of the fact that Booker simply restores some additional measure of discretion to sentencing judges, its holding simply does not shift the foundations of American constitutional law and, hence, does not apply retroactively on collateral attack.

<span style="padding-left:2em"></span><u>Booker</u> entailed an extension of the procedural rule announced in <u>Apprendi</u> that factual findings that increase the maximum penalty permitted by law must be found by a jury beyond a reasonable doubt. The Supreme Court has defined a "new rule" under <u>Teague</u> as one that was not "'*dictated* by precedent existing at the time the defendant's conviction became final.'" <u>Graham v. Collins</u>, 506 U.S. at 467 (quoting <u>Teague</u>, 489 U.S. at 301 (emphasis in <u>Teague</u>)); <u>see</u>

5

Sawyer v. Smith, 497 U.S. 227, 234 (1990). Subsequent decisions have made clear that a rule may be "new" despite the fact that earlier cases supported it, Sawyer, 497 U.S. at 236, "or even control or govern" it, Saffle v. Parks, 494 U.S. 484, 491 (1990). Under that definition, Booker announced a new rule for Teague purposes.

Moreover, while not directly addressing the retroactivity of its extension of Blakely to the Sentencing Guidelines and its holding that those Guidelines would be advisory, the "merits majority" of Booker went out of its way to clarify that its holding on the merits and the remedy of the Sixth Amendment claim was to apply "to all cases on direct review." 2005 WL 50108 at *29 (citing Griffith v. Kentucky, 479 U.S. 314, 328 (1987): "[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases . . . pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past."). This statement has already been read by one court, in the context of a successive petition, as limiting the application of the rule to cases in the direct review pipeline especially in view of the fact that the Supreme Court has already concluded that Ring v. Arizona, 536 U.S. 584 (2002), a case which applied the principle of Apprendi to death sentences imposed on the basis of aggravating factors, was not to be applied retroactively to cases on collateral review. See Hamlin v. United States, 2005 WL 102959 at *1 (citing Schriro v. Summerlin, 124 S. Ct. at 2519, 2526 (2004) ("Ring announced a new procedural rule that does not apply retroactively to cases already final on direct review")); see also Stevens v. United States, 2005 WL 102958 (D. Me. Jan 18, 2005).[2]

---

[2] One court, declining to decide whether the rule announced in Blakely/Booker applies retroactively, held that, even if those cases were retroactively applied, relief would be limited to persons presently serving a sentence that was enhanced on the basis of contested facts that were

6

## CONCLUSION

For the reasons stated in the Government's April 30, 2004 response (Doc. 31), the Government's August 18, 2004 response (Doc. 41) and herein, and based upon the full record, it is respectfully submitted that the petitioner's motion to vacate, set aside and correct his sentence should be summarily denied.

>Respectfully submitted,
>
>KEVIN J. O'CONNOR
>UNITED STATES ATTORNEY
>
>*/s/ Geoffrey M. Stone*
>GEOFFREY M. STONE
>ASSISTANT UNITED STATES ATTORNEY
>Federal Bar No. ct25326
>450 Main Street
>Hartford, Connecticut 06103
>Telephone (860) 947-1101

---

not found to be true, beyond a reasonable doubt, nor admitted by the defendant. See United States v. Siegelbaum, 2005 WL 196526 at *3 (D. Or. Jan. 26, 2005). The court noted that only if a defendant actually disputed the facts that resulted in the sentence enhancement, and the court decided the matter against him, can the defendant show that he may have been prejudiced by application of the wrong standard of proof and, to vacate a sentence enhancement on the basis of Blakely/Booker, when a defendant never disputed the facts upon which that enhancement was premised, would confer an unwarranted windfall.

7

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing memorandum was mailed this 25th day of February 2005, to:

Collington Green
Register No. 14730-014
FSL Elkton
P.O. Box 10
Elkton, Ohio 44432

Richard Cramer, Esq.
449 Silas Deane Highway
Wethersfield, CT 06109

                                                                             _____
                                                                             GEOFFREY M. STONE
                                                                             ASSISTANT UNITED STATES ATTORNEY